UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| HUYNH AHN TRAN, GARY L. HOWELL, BETH L. ROMIG, AND MARK R. ROMIG,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF BATTLEGROUND, WASHINGTON,<br><br>Defendant. | CASE NO. C15-5472BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING AS MOOT PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND REMANDING |

This matter comes before the Court on Plaintiffs Gary L. Howell, Beth L. Romig, Mark R. Romig, and Huynh Ahn Tran's ("Plaintiffs") motion for partial summary judgment (Dkt. 19) and Defendant The City of Battleground, Washington's ("City") motion for summary judgment (Dkt. 28). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby rules as follows:

ORDER - 1

# I. PROCEDURAL HISTORY

On June 11, 2015, Plaintiffs filed a complaint against the City in Clark County Superior Court for the State of Washington asserting causes of action for negligence, taking without compensation in violation of the U.S. and Washington constitutions, violation of procedural and substantive due process, and a violation of 42 U.S.C. § 1983. Dkt. 2 at 5–16 ("Comp.").

On July 8, 2015, the City removed the matter to this Court. Dkt. 1.

On May 10, 2016, Plaintiffs filed a motion for partial summary judgment. Dkt. 19. On June 13, 2016, the City responded. Dkt. 23. On June 15, 2016, the City filed a motion for summary judgment. Dkt. 28. On June 17, 2016, Plaintiffs replied to the City's response. Dkt. 29. On July 1, 2016, Plaintiffs responded to the City's motion. Dkt. 31. On July 8, 2016, the City replied. Dkt. 34.

# II. FACTUAL BACKGROUND

This dispute arises from Plaintiffs' purchases of Lots 172 through 179, Crystal Springs PUD Phase IV, a residential subdivision located within the City. Plaintiffs purchased the lots on February 4, 2015 at a treasurer's tax foreclosure sale. It is undisputed that Plaintiffs' lots contain federally protected wetlands, and Plaintiffs allege that the federal protections have stripped the lots of all economic value. Comp. at ¶ 43.

The City gave preliminary approval of the Crystal Springs development in 1995 and final approval in 1996. Dkt. 20, Affidavit of Counsel, Exhs. 4–7. Relevant to the present issues, the City Council ("Council") found that the development contained "a 22-acre wetland situated at the north end of the site . . ." and "[t]he developer has raised

concerns about federal regulations limiting what uses may actually occur within a wetland." *Id*., Exh. 7 at 1–2.  The Council concluded as follows:

> The proposed mitigation to the wetlands with the plantings described in the Findings of Fact are satisfactory. The Homeowners Association of the Planned Unit Development will be encouraged by the covenants, conditions and restrictions to seek further enhancements by and through the Army Corps of Engineers. Provisions will be placed on the final plat allowing other property owners within the City of Battle who may have wetland restrictions to use this area to mitigate wetlands on their own property as allowed by federal, state and local regulations.

*Id*. at 2–3.  In conjunction with the approval, the developer obtained a performance bond issued to the City covering the intended wetland enhancements and recreational facilities. *Id*., Exh. 8.

On June 25, 2001, the City's Senior Planner, Kevin Snyder, issued a letter to the City Manager and the Council regarding the final approval of Phase VI of the Crystal Springs development.  *Id*., Exh. 9.  Relevant to the present issues, Mr. Snyder wrote as follows:

> Remaining recreational amenities originally identified in the July 17, 1995 Subdivision Findings of Fact and July 18, 1996 Final Development Plan Findings of Fact shall be constructed within two (2) years from the date of recording of the final plat for Phase IV. If said improvements are not constructed the performance bond to cover the cost of these improvements shall be called in by the City.

*Id*. at 3.  On July 2, 2001, the Council approved Mr. Snyder's recommendations and Phase VI of the development. *Id*., Exh. 10.

On June 11, 2003, the City notified the developer that the period for satisfaction of the wetland and recreational facilities would expire on July 25, 2003, and requested documentation regarding the status of improvements.  *Id*., Exh. 11. On August 18, 2004,

October 12, 2005, and January 23, 2007, the City granted extensions for completion of the wetland enhancements. *Id.*, Exhs. 12–14.

On November 27, 2007, the Army Corps of Engineers ("Corps") issued a permit to fill 1.83 acres of wetlands by November 26, 2010. *Id.*, Exh. 15. Of particular relevance, the Site Map attached to the permit denotes the area north of NE 16th Way as "Enhancement Area (17.86 acres)," in place of Plaintiffs' lots. *Id*. at 6-7.

In June 2010, a new developer, Timberland, Inc., acquired the project after the previous developer went bankrupt. Dkt. On November 29, 2010, the Corps issued Timberland a notice of violation of the permit, ordering cessation of work for filling 0.95 acres north of NE 16th Way. *Id.*, Exh. 2. A Google Earth image is attached to the violation with a handwritten "Unauthorized Fill" notation indicating the specific violation. *Id*. at 5.

On December 8, 2010, Timberland responded to the Corps. On March 1, 2011, the Corps responded and notified Timberland that it must remove all of the fill because the initial permit was not properly transferred to Timberland from the previous developer. Dkt. 26, Declaration of Jeffery Meyers, Exh. 8. The Corps further informed Timberland that it was "unlikely that retention of the fill would be supported by an alternatives analysis under the Section 404(b)(1) Guidelines." *Id*. at 2. The Corps concluded that retaining the fill was "not a viable option" and encouraged Timberland to voluntarily remove the fill. *Id*. Failure to remove the fill would result in possible enforcement actions. *Id*. Timberland elected to comply with the Corps directives and submitted a plan to remove the fill from certain lots, including Plaintiffs' lots. *Id.*, Exhs. 9–10.

After the fill was removed from the lots, the property went into foreclosure. On February 4, 2015, Plaintiffs purchased the lots and, on February 19, 2015, the deeds were recorded. *Id*. Plaintiffs filed this case a few months thereafter.

### III. DISCUSSION

Although the City moves for summary judgment on all of Plaintiffs' claims, the Court need only address Plaintiffs' federal claims because those claims are not ripe. With regard to the remainder of the claims, the Court declines to exercise supplemental jurisdiction and remands them to Clark County Superior Court.

**A.    Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc*., 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     Ripeness**

A constitutional challenge to land use regulations is ripe when a property owner or developer has received the planning commission's "'final, definitive position regarding how it will apply the regulations at issue to the particular land in question.'" *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 351 (1986) (quoting *Williamson County Regional Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 191 (1985)).  "We have held that *MacDonald* and *Williamson* require a final decision by the government agency that inflicts a concrete harm on the landowner." *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1232 (9th Cir. 1994) (citing *Kinzli v. City of Santa Cruz*, 818 F.2d 1449, 1454

(9th Cir.1987), *cert. denied*, 484 U.S. 1043 (1988)).  Typically, before a decision is final, the landowner must have submitted one formal development plan and sought a variance from any regulations barring development in the proposed plan that have been denied. *Herrington v. County of Sonoma*, 857 F.2d 567, 569 (9th Cir.1988), *cert. denied*, 489 U.S. 1090 (1989); *Kinzli*, 818 F.2d at 1454–55.

"We have recognized a 'futility exception' to the final decision requirement, under which 'the resubmission of a development plan or the application for a variance from prohibitive regulations may be excused if those actions would be idle or futile.'" *Kawaoka*, 17 F.3d at 1232 (quoting *Del Monte Dunes, Ltd. v. Monterey*, 920 F.2d 1496, 1501 (9th Cir.1990); *Herrington*, 857 F.2d at 570).  "However, this futility exception does not alter a party's obligation to file at least one meaningful development proposal." *Id.* (citing *Herrington*, 857 F.2d at 569).

In this case, Plaintiffs' constitutional claims are not ripe.  They do not dispute that they have not filed any development proposal.  Plaintiffs, however, provide two arguments in support of their position that their claims are ripe.  First, Plaintiffs contend that they have fully exhausted their claims under state law.  Dkt. 31 at 9–12.  The Court declines to address these state law issues because complete exhaustion under state law does not involve Plaintiffs filing any meaningful development project.  *See id*.

Second, Plaintiffs argue that exhaustion of their federal claims should be excused. Specifically, Plaintiffs argue that "[e]xhaustion of plaintiffs' federal claims is also excused under the Ninth Circuit's futility exception because the submission of an application would be an idle and futile act." Dkt. 31 at 12 (quotations and citations

1  omitted). Plaintiffs' argument is without merit because the "futility exception does not

2  alter a party's obligation to file at least one meaningful development proposal."

3  *Kawaoka*, 17 F.3d at 1232. Essentially, Plaintiffs ask the Court to ignore binding

4  precedent and deny the City's motion for summary judgment. The Court declines to do

5  so. Therefore, the Court grants the City's motion because Plaintiffs' federal

6  constitutional claims are not ripe for review.

7  **C.   State Law Claims**

8          The Court may decline to exercise supplemental jurisdiction over a claim if it has

9  dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3).

10         In this case, the Court declines to exercise supplemental jurisdiction. Not only did

11 Plaintiffs originally file this action in state court, but Plaintiffs also moved to remand the

12 state law claims because they contend that the claims raise novel and complex issues of

13 state law. Dkt. 9. Moreover, the remaining state law claims involve a local dispute

14 between a City Council and owners of property within the City, which weighs heavily in

15 favor of returning the matter to the local court. Therefore, the Court remands this matter

16 and denies the parties' remaining motions as moot.

17         //

18         //

19         //

20         //

21         //

22         //

## IV. ORDER

Therefore, it is hereby **ORDERED** that (1) the City's motion for summary judgment (Dkt. 28) is **GRANTED in part** on the ripeness of the City's federal claims and **DENIED as moot** on all other issues, (2) Plaintiffs' motion for summary judgment is **DENIED as moot**, (3) the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining claims, and (4) the Clerk shall enter judgment for the City, close this case, and remand the matter to Clark County Superior Court.

Dated this 2nd day of September, 2016.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge